**In re SUNDANCE CORPORATION, Debtor.**

**Bankruptcy No. 88–40137.**

United States Bankruptcy Court, D. Montana.

April 6, 1988.

Jerome Shulkin, Seattle, Wash., Pierre L. Bacheller, Billings, Mont., for debtor.

John P. Paul, Great Falls, Mont., Douglas M. Ragen, Miller, Nash, Wiener Hager & Carlson, Portland, Or., for Community 1st Federal Sav. & Loan.

## ORDER CHANGING VENUE

JOHN L. PETERSON, Bankruptcy Judge.

At Butte in said District this 6th day of April, 1988.

On February 26, 1988, Sundance Corporation filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, District of Montana. The Debtor's only asset is a 2500 acre apple orchard presently valued at 12.9 million dollars located in Eastern Washington. On March 17, 1988, Community First Federal Savings & Loan (Community) filed a motion to change the venue of this case to the United States Bankruptcy Court, Eastern District of Washington. A motion for change of venue or to transfer a case is a "matter concerning the administration of the estate" under 28 U.S. C. § 157(b), and, as such, is a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Baltimore Food Systems, Inc.,* 71 B.R.

795, 796 (Bankr.D.S.C.1986); *In re Thomasson*, 60 B.R. 629 (Bankr.M.D.Tenn.1986). Accordingly, this Court has jurisdiction to exercise its discretion in this matter. *See, Baltimore Foods*, supra, at 804; and Bankruptcy Rule 1014(a)(2).

On March 31, 1988, after notice to all parties in interest, the motion to change venue was heard. Arguments and testimony were presented by the Debtor and by Community. Community contends that venue should be changed on the following grounds:

(1) That Montana is an improper venue, because the Debtor's "domocile, residence, principal place of business" and "location of principal assets" are not in Montana; and

(2) That the "interest of justice and convenience of the parties" favors the change of venue to the Eastern District of Washington.

The Debtor resists the motion on the grounds

(1) That Community's motion for a change of venue is not timely made;

(2) That the Debtor's case is properly venued in Montana, which is its principal place of business; and

(3) That the "interest of justice and convenience of the parties" favors Montana.

■ Proper venue in a Chapter 11 case is governed by 28 U.S.C. § 1408, which states:

"Except as provided in Section 1410 of this title, a case under title 11 may be commenced in the district court for the district—

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-eighty-day period than the domicile, residence, or principal place of business in the United States, or principal assets in the

United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership."

Community argues that the Debtor does not have proper venue in Montana because it does not have "domicile, residence, principal place of business" or "principal assets" in Montana. Community cites *Clerk & Reid Co., Inc. v. United States*, 804 F.2d 3 (1st Cir.1986), for the proposition that "the domicile and residence of a corporation is the state in which the debtor is incorporated". However, the Court in *Clark & Reid*, was interpreting venue statute 28 U.S.C. § 2343, and relied on the holding in *American Civil Liberties Union v. F.C.C.*, 774 F.2d 24 (1st Cir.1985). The *ACLU* Court noted:

"Given the particularly narrow wording chosen by Congress in Section 2343, there is simply no basis to conclude that Congress intended to endow membership corporations with a choice of venue unavailable to other petitioners." *Id.* at 26.

Section 2343 only deals with the venue for review of Orders of Federal Agencies (such as the F.C.C. and S.E.C.). Accordingly, the authority relied upon by Community is not applicable in this matter.

The Court in *Baltimore Foods*, supra, at 799–800 pointed out:

"As the court in *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239 (5th Cir.1979), noted, '[a] history of the Chapter XI venue provision is essential to an understanding of the meaning of principal places of business'. 596 F.2d at 1244. Prior to 1973, Section (2)(a)(1) of the Bankruptcy Act, 11 U.S.C. § 11(a)(1), limited venue for Chapter 11 cases to the corporation's principal place of business:

The Courts of the United States hereinbefore defined as courts of bankruptcy are ... hereby invested ... with such jurisdiction at law or in equity as will enable them to ...

(1) Adjudge persons bankrupt who have had their principal place of business, resided, or had their domicile

within their respective territorial jurisdictions for the preceding six months, or for a longer portion of the preceding six months than in any other jurisdiction ...

In 1973 the adoption of Rule 116(a)(2) changed the Chapter 11 venue provision to allow for venue in both the district where the corporation maintains its principal place of business or its principal assets:

Corporation or Partnership.

A petition by or against a corporation or a partnership may be filed in the district (A) where the bankrupt has had its principal place of business or its principal assets for the preceding 6 months or for a longer portion thereof than in any other district; or, (B) if there is no such district, in any district where the bankruptcy has property.

Rule 116 was superseded by 28 U.S.C. § 1472, a part of the Bankruptcy Reform Act of 1978, which was subsequently superseded by the current provision, 28 U.S.C. § 1408, a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The language in §§ 1408 and 1472 are virtually identical.  * * *

The *Commonwealth Oil* court concluded that '[a]llowing venue in the district where a debtor manages its business is particularly appropriate in both Chapter X and XI cases. A corporate arrangement or reorganization is primarily a financial proceeding. The debtor is maintained as a going enterprise and its finances are put back in order.

... Where the corporation transacts its corporate business is a logical place for venue in such proceedings.' 596 F.2d at 1246."

Pursuant to § 1408, this Court finds that proper venue for this case could be in Montana (principal place of business) or Washington (principal assets).

In order to change the venue of a case filed in a proper district, 28 U.S.C. § 1412 and Bankruptcy Rule 1014(a) governs the request. Rule 1014(a) in pertinent part, states:

"(a) Transfer of cases.

(1) *Cases Filed in Proper District.* If a petition is filed in a proper district, on timely motion of a party in interest, and after hearing on notice to the petitioners and other entities as directed by the court, the case may be transferred to any other district if the court determines that the transfer is in the interest of justice and for the convenience of the parties."

■ In this case, I must first address the Debtor's contention that Community's motion for a change of venue is not timely made. The Debtor correctly states that the timeliness of a change of venue motion is governed by Rule 12, F.R.Civ.P. In discussing Rule 12, *Collier on Bankruptcy* states the following:

"Under Federal Rule 12, an objection to venue is timely if made in a pre-pleading motion under 12(b) or, if such a motion is not made, in the answer itself. The objection to venue is not waived although it is joined with matters affecting the merits of the case, but if the defendant proceeds first to challenge the merits of the case and thereafter objects to improper venue, it comes too late." 1 *Collier on Bankruptcy*, § 3.02 at 3–150. (15th Ed. 1987).

In this case, Community has presented and the Court has decided a motion under § 543 of the Code dealing with excusing a state court receiver turning over the principal asset of the Debtor. However, at trial on the § 543 motion, Community advised the Court that a motion for change of venue was contemplated, and thereby reserved its rights. Further, the § 543 motion did not decide any matter dealing with the merits of this Chapter 11 case. It was a procedural step required by the language of § 543. Accordingly, this Court finds that Community has not waived its objection to venue and that its motion has been timely filed.

■ The party moving for the change of venue has the burden of proving, by a preponderance of the evidence, whether a transfer is appropriate. 28 U.S.C. § 1412; *Frazier v. Lawyers Title Ins. Corp.,* (*In re Butcher*), 46 B.R. 109, 112 (Bankr.N.D.Ga. 1985); *In re Eleven Oak Tower Ltd. Part-*

*nership,* 59 B.R. 626, 628 (Bankr.N.D.Ill. 1986). Several factors should be considered by a court when determining where venue is proper. As the *Eleven Oak Tower* court addressed them, the factors include:

"(1) proximity of creditors to the court;

(2) proximity of debtor to the court;

(3) the location of witnesses necessary to the administration of the estate;

(4) the location of the debtor's assets;

(5) the ability to conduct an economical and efficient administration of the estate in the forum; and

(6) the existence of any 'intentional relationships' between the instant debtor and his affiliates or other debtors before the court." *Id.* at 628–29.

Each of the above elements will be discussed with regard to each party's contentions.

### A. *Proximity of Creditors to the court.*

In this case the Debtors's schedules show 9 creditors in the State of Washington and 6 creditors in the State of Montana. However, the Washington creditors are owed well in excess of 90% of the Debtor's outstanding debt. Therefore, this element is certainly in favor of the Washington venue.

### B. *Proximity of the Debtor to the court.*

The Debtor's main office and sole employee are located in Billings, Montana. As the *Baltimore Food* court noted, quoting *Commonwealth Oil,* supra, at 1248:

"In this context, the concern is with the corporation's employees who must appear in court, not with the employees who are on the production line ..."

In this case, the Debtor has offered extensive testimony that two individuals responsible for operation of the Debtor's apple orchard are in Washington and will be intricately involved in decisions on the Plan of Reorganization. The Debtor stated that these two individuals as well as its Billings executive would be just as accessible to the Montana Court as the Washington Court. This element would, therefore, favor the Debtor's contention that venue should be in Montana.

### C. *Location of witnesses necessary to administration of the estate.*

In this case, evidence presented and the arguments of counsel show that most witnesses are much closer to the Washington Court than to the Montana Court. The majority of witnesses, for both the Debtor and the creditors, are located in Washington so that this element certainly favors a Washington venue.

### D. *The location of the debtor's assets.*

In this case, the sole asset which will form the basis for a Plan of Reorganization is the 2500 acre apple orchard located in Eastern Washington. The Debtor relies on the *Baltimore Food* case which states:

"The next factor to be considered is the location of the corporation's assets. Admittedly, the assets are in Maryland. But the location of the assets 'is of little importance in a Chapter XI proceeding where the goal is financial rehabilitation, not liquidation.'" *Commonwealth Oil,* 596 F.2d at 1248. *Baltimore Food,* supra, at 803.

Under this rationale, the Debtor believes venue is proper in Montana, because the Secretary/Treasurer of the Debtor corporation is in Billings, Montana, and the financial rehabilitation will be planned there. However, the Debtor testified that the apple orchard foreman and a consultant, both residing in Washington, will be intricately involved in the development and success of the Plan of Reorganization. The *Baltimore Food* court further explained how the location of assets may affect venue when the asset is real property.

"Moreover, in the four cases cited by movants in which transfer was allowed despite holdings that venue was proper due to the location of the principal assets, the assets in issue were all real estate holdings. *In re Landmark Capital Co.,* 19 B.R. 342 [Bankr.S.D.N.Y.

1982]; *In re Old Delmar Corp.*, 45 B.R. 883 (Bankr.S.D.N.Y.1985); *In re Eleven Oak Tower Limited Partnership*, 59 B.R. 626 (Bankr.N.D.Ill., E.D.1986); *In re Pickwick Place Limited Partnership*, 63 B.R. 290 (Bankr.N.D.Ill.1986). These cases point out the special consideration to administration at the situs of the assets where those assets consist of real property: '[M]atters concerning real property have always been of local concern and traditionally are decided at the situs of the property'. *Old Delmar*, 45 B.R. at 883, citing *First Federal Savings & Loan v. Dew Mortgage Co., Inc. (In re Dew Mortgage Co., Inc.)*, 10 B.R. 242 (Bankr.M.D.Fla.1981)." *Id.* at 803.

In this case, it is quite obvious that this element greatly favors a Washington venue and is the most compelling reason to change venue to Eastern Washington.

E. *The ability to conduct an economical and efficient administration of the estate in the forum.*

The *Commonwealth* court held that this element was the most important factor. *Commonwealth*, 596 F.2d at 1239. In this case, lead counsel for the major creditor is in Washington, as is lead counsel for the Debtor. The majority of witnesses and creditors are located in Washington. Counsel for Community testified that he would need to expend over one and one-half days just to come to the Montana Court for hearings and that the flight route was extremely burdensome. The principal witness for the Debtor corporation took four hours to go one way to the Montana Court. This Court finds that this case would be more economically administrated in Washington, both monetarily and time-wise.

F. *Existence of 'intentional relationships' between debtor and its affiliates.*

This element is not a factor on the venue issue.

In summarizing, under the *Eleven Oak Tower* factors as set out above, this case addresses itself more conveniently and appropriately to a Washington venue than to a Montana venue. As noted above in the *Baltimore Food* case, 71 B.R. at 803, ample case authority exists in support of this Court's discretion to transfer a case involving real estate to the venue where the situs of the Debtor's real estate is located. I conclude the reasoning of those case authorities compel a change of venue to Eastern Washington.

IT IS ORDERED that the Clerk of the Court transfer the above entitled cause to the Eastern District of Washington for all further proceedings.